UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

TRIPRO CONSULTING, LLC,

     Plaintiff,

v.                                    Case No: 6:23-cv-568-JSS-DCI

CACI, INC. - FEDERAL,

     Defendant.

_____/

## ORDER

Defendant, CACI, Inc. – Federal, moves for summary judgment pursuant to Federal Rule of Civil Procedure 56.  (Dkt. 37.)  Plaintiff, TriPro Consulting, LLC, opposes the Motion.  (Dkt. 48.)  Upon consideration, the motion for summary judgment is denied.

## BACKGROUND

This action arises from a breach of contract dispute.  (Dkt. 1.)  On November 24, 2020, Plaintiff entered into a contract to provide cybersecurity services to the U.S. Government through Defendant as a subcontractor.  (*See generally* Dkt. 1-1.)  To perform work under the contract, Plaintiff was required to maintain a certain level of government-approved security clearance.  (*Id*. at 45.)  The contract included the following termination provision:

Item 24 – Termination for Convenience

[Defendant] may terminate the Agreement in whole or in part if it is determined that a termination is in [Defendant]'s and/or the [g]overnment's best interests or if the [g]overnment exercises its termination for convenience rights under the Prime Contract as defined in FAR 52.249-6. [Defendant] may terminate this Agreement by issuing a written notice of termination to [Plaintiff]. The written notice will include the termination effective date, justification[,] and actions to be taken by [Plaintiff].

In the event that [Defendant] terminates this Agreement pursuant to [g]overnment direction, [Plaintiff]'s recovery of termination costs shall be limited to the extent that [Defendant] is able to recover such costs from the [g]overnment.

(Dkt. 1-1 at 14.)  On July 27, 2022, Defendant sent Plaintiff a termination notice, indicating only that it was terminating the contract "based on customer direction." (Dkt. 1-2 at 1.)

On March 28, 2023, Plaintiff filed a two-count complaint alleging breach of contract (Count I) and violation of Florida Statute section 542.335 (Count II).  (Dkt. 1.)  In Count I, Plaintiff alleged that "[a] valid contract existed between [the parties]" and that Defendant "materially breached the [c]ontract by terminating it without a proper basis and by attempting to solicit TriPro's employee." (*Id.* ¶¶ 14–15.)  In Count II, Plaintiff alleged that Defendant violated section 542.335 of the Florida Statutes by soliciting one of Plaintiff's employees.  (*Id.* ¶¶ 18–23.)  On December 8, 2023, Defendant moved for summary judgment on both counts, arguing that no genuine issue of material fact remained for trial.  (Dkt. 23.)  Because the parties agreed that Defendant was entitled to judgment as a matter of law as to Count II, (*see* Dkt. 23;

Dkt. 26 at 1; Dkt. 27 at 1), the court granted Defendant's motion for summary judgment as to that count, (Dkt. 31 at 8).

With regard to Count I, Defendant argued that the contract was properly terminated in accordance with the termination for convenience clause because termination was in Defendant's or the government's best interests as Plaintiff had "lost the security clearance required for Plaintiff to perform work under the [c]ontract," notice of the termination was provided, and no payment remained outstanding. (Dkt. 23 at 3–4.) Plaintiff argued to the contrary that Defendant's termination of the contract "was based upon its own mistaken belief that [Plaintiff]'s facility clearance had lapsed" and that the "[t]ermination notice . . . was missing the justification required by the [c]ontract." (Dkt. 26-5 at 1.) Plaintiff provided evidence, in the form of an affidavit from Brian McElroy, a senior systems engineer employed by Plaintiff, that "[Defendant]'s termination of the [c]ontract was based on its own misinformation about [McElroy's] clearance status and was not in the government's best interest." (Dkt. 26-4 at 2.) The court thus found that the "parties ha[d] presented conflicting evidence concerning the termination" of the contract and, therefore, that "the entry of summary judgment as to Count I" was precluded. (Dkt. 31 at 7.)

Defendant moves again for summary judgment arguing that, in a deposition taken after the court's entry of its order denying summary judgment, McElroy "testified that Plaintiff's termination was directly attributable to the deterioration between him and the branch chief of the [g]overnment." (Dkt. 37 at 9.) This, Defendant argues, entitles it to summary judgment. (*Id.* at 11.) In its response,

Plaintiff contends that a genuine dispute of material fact remains because Robert Furstoss, Defendant's corporate representative, provided testimony indicating that Defendant's termination of Plaintiff was not in the best interests of the government. (*See* Dkt. 48 at 3.)[1]

## APPLICABLE STANDARD

Granting summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is considered "genuine" only if "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material for the purposes of summary judgment only if it might affect the outcome of the suit under the governing law." *Kerr v. McDonald's Corp.*, 427 F.3d 947, 951 (11th Cir. 2005). "The moving party bears 'the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

---

[1] In its response, Plaintiff requests that the court grant it judgment as a matter of law, (Dkt. 48 at 1), because, it claims, Furstoss's testimony "created a basis for judgment as a matter of law for Plaintiff," (*id.* at 3). However, to the extent that this conclusory statement is intended as a motion for summary judgment, it must be denied as it was filed after the deadline for dispositive motions had expired, (*see* Dkt. 14 at 1), and Plaintiff fails to make any showing as to good cause which could justify a modification of the scheduling order, *see* Fed. R. Civ. P. 16(b)(4). Similarly, Plaintiff's request that the court "grant Plaintiff its attorney[] fees in responding to the Motion," (Dkt. 48 at 1), must be denied because Plaintiff fails to provide caselaw demonstrating that an award of attorney's fees is proper in such a situation. (*See* Dkt. 48); *Hamilton v. Southland Christian Sch., Inc.*, 680 F.3d 1316, 1319 (11th Cir. 2012) ("A passing reference to an issue in a brief is not enough and the failure to make arguments and cite authorities in support of an issue waives it."), *overruled in part on other grounds by United States v. Durham*, 795 F.3d 1329, 1331 (11th Cir. 2015) (en banc).

demonstrate the absence of a genuine issue of material fact.'" *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)) (internal quotations omitted).  If the movant shows that no evidence supports the nonmoving party's case, "[t]he burden then shifts to the non-moving party, who must go beyond the pleadings, and present affirmative evidence to show that a genuine issue of material fact exists." *Porter v. Ray*, 461 F.3d 1315, 1320 (11th Cir. 2006) (citing *Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115–17 (11th Cir.1993)).

In determining whether a genuine dispute of material fact exists, "courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion [and] [a]ll reasonable doubts about the facts should be resolved in favor of the non-movant." *Burton v. City of Belle Glade*, 178 F.3d 1175, 1187 (11th Cir. 1999) (citing *Clemons v. Dougherty Cnty.*, 684 F.2d 1365, 1368–69 (11th Cir. 1982)); *see Skop v. City of Atlanta*, 485 F.3d 1130, 1136 (11th Cir. 2007); *Layton v. DHL Express (USA), Inc.*, 686 F.3d 172, 1175 (11th Cir. 2012).  A court "may not weigh conflicting evidence or make credibility determinations of [its] own." *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1292 (11th Cir. 2012) (citing *FindWhat Investor Grp. v. FindWhat.com*, 658 F.3d 1282, 1307 (11th Cir. 2011)); *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir. 2003) (the "court may not weigh the evidence or find facts"). "If the record presents disputed issues of fact, the court may not decide them; rather, [it] must deny the motion and proceed to trial." *Jones*, 683 F.3d at 1292.  Summary

judgment should only be granted "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## ANALYSIS

The court notes first that successive motions for summary judgment are not favored in this circuit. *See, e.g.*, *Fernandez v. Bankers Nat'l Life Ins. Co.*, 906 F.2d 559, 569 (11th Cir. 1990) ("[W]e certainly do not approve in general the piecemeal consideration of successive motions for summary judgment, since defendants might well normally be held to the requirement that they present their strongest case for summary judgment when the matter is first raised . . . ." (quotation omitted)); *Mckenzie-Wharton v. United Airlines, Inc.*, No. 8:15-cv-114-17MAP, 2016 WL 5346948, at *7 (M.D. Fla. Sept. 23, 2016) ("While successive motions for summary judgment are not prohibited by the Federal Rules or controlling case law, a second motion for summary judgment is not permitted as a matter of right.  Successive motions for summary judgment promote piecemeal adjudication and erode judicial economy.  As a result, this [c]ourt specifically prohibits multiple motions for summary judgment. That prohibition is unquestionably within this [c]ourt's inherent power." (internal citations omitted)).  Moreover, district courts have found that the Middle District of Florida's Local Rules limit parties to a single motion for summary judgment absent express permission from the court. *See Benhassine v. Star Transportation Mgmt., Inc.*, No. 6:12-cv-1508-Orl-37GJK, 2013 WL 12164716, at *1 (M.D. Fla. Oct. 29, 2013) ("Both Local Rule 3.01(a) and the [c]ourt's Case Management and Scheduling Order . . . limit

motions for summary judgment and supporting memoranda to a single document of not more than twenty-five (25) pages. . . . [T]he guiding purpose of both the [Case Management Scheduling Order] and the Local Rules is to discourage wasteful pretrial activities[] and to secure the just, speedy, and inexpensive determination of the action. Accordingly, duplicative motions for summary judgment are not permitted." (internal quotation marks and citation omitted)).

For these reasons, Plaintiff's Motion—its second motion for summary judgment—is due to be stricken. *See Equity Lifestyle Props., Inc. v. Fla. Mowing & Landscape Serv., Inc.*, 556 F.3d 1232, 1240 (11th Cir. 2009) ("A district court has inherent authority to manage its own docket so as to achieve the orderly and expeditious disposition of cases." (quotation omitted)); *Voter Verified, Inc. v. Premier Election Sols., Inc.*, No. 6:09-cv-1968-Orl-19KRS, 2010 WL 1049793, at *2 (M.D. Fla. Mar. 22, 2010) ("[A] district court may exercise its discretion in managing the filing of summary judgment motions. . . . Thus, pursuant to the [c]ourt's inherent authority to manage its docket, Local Rule 3.01(a), and the Case Management and Scheduling Order, [the plaintiff] is permitted to file a single summary judgment motion of not more than twenty[-]five pages. If [the p]laintiff wishes to file successive summary judgment motions . . . [it] must first request the [c]ourt's permission by filing a motion in accordance with Local Rule 3.01(d)."); *Ruiz v. Sharkninja Operating LLC*, No. 6:21-cv-1628-WWB-LHP, 2024 WL 2709638, at *2 (M.D. Fla. Feb. 9, 2024) ("[The

d]efendants did not seek leave to file a successive motion for summary judgment and, therefore, their second Motion will be stricken without further analysis.").

Moreover, even if the court were to consider the Motion, a genuine dispute of material fact remains such that summary judgment is precluded. *Jones*, 683 F.3d at 1292. Defendant now argues that McElroy's deposition testimony clarifies that the government directed Defendant to terminate the contract "due to the deteriorated business relationship between McElroy and the [g]overnment's branch chief," Matisha Marshall. (Dkt. 37 at 7–8.) This refers to McElroy's testimony that Matisha Marshall, a government employee with oversight of Defendant and its contract with Plaintiff, maneuvered to have an individual with whom she was allegedly romantically involved, Johnnie Henderson, brought onto the project to work alongside Plaintiff. (*See* Dkt. 48-1 at 24–28.) McElroy testified that he noted this conflict of interest to a friend, which "got back" to Marshall, who "call[ed] [McElroy] upset, angry, screaming, erratic, about . . . damaging her reputation." (*Id.* at 26–27.) This situation, according to McElroy, prompted Marshall to state that she "hate[d] Brian McElroy" and that "[Plaintiff] c[ould] never work here again." (*Id.* at 22.) Thus, Defendant argues that "it was not the issue of Plaintiff's security clearance that led to the [g]overnment's direction to" terminate the contract, "but instead the antipathy that developed between McElroy and the branch chief of the [g]overnment for the [p]roject." (Dkt. 37 at 9.)

Elsewhere in his deposition, however, McElroy testified that the termination was the result of Defendant's mistaken belief that Plaintiff had lost the access required

to work on the project.  (*See* Dkt. 48-1 at 73–75.)  Moreover, Robert Furstoss, one of Defendant's deputy program managers, testified that the decision to terminate the contract was predicated, at least in part, on Defendant's belief that Plaintiff had lost its access.  (Dkt. 48-2 at 8, 70–75, 91–92.)  The fact that Furstoss also testified that the government expressed a desire not to continue working with Plaintiff due to strife between McElroy and Marshall serves only to highlight the existence of a genuine dispute of material fact—what justification, if any, existed to support Defendant's termination of the contract.  (*See id.* at 149); *Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019) ("The conflict in testimony presents a genuine dispute of material fact as to whether [the decedent] had a serious medical need, thus precluding summary judgment in [the defendants]' favor.").  Indeed, when pressed on why the contract was terminated, Furstoss testified that the clearance issue was the primary, if not exclusive, factor.

> Q:  So your position is that the termination for convenience can be done for whatever reason, and that reason is further justified because Brian McElroy was unprofessional in his response to this security issue.  So regardless of whether or not his clearance was actually intact the whole time, it does[ not] matter.  Because [Defendant] had a legitimate government source [(Marshall)] tell [it] that there was an issue, and the way that [McElroy] responded to it was enough for [the government] to not want to work with him in the future . . . .  Is that accurate?
>
> A:  No, sir. . . .  The government source that has been doing security work . . . for at the very least ten-plus years . . . told us that there was an issue with the[ir facility and personnel

> clearance], which meant that [Plaintiff] had to be removed
> from the contract.

(Dkt. 48-2 at 184–85.)  This dispute is further underscored both by Furstoss's blending these reasons in explaining why the contract was terminated, (*see* Dkt. 48-2 at 134), and by McElroy's contradictory testimony with regard to his personal conflict with Marshall, (Dkt. 48-1 at 119–20.)

Moreover, the affidavit of Gregg Nivala, which Defendant relied on in its first motion for summary judgment, indicates only that the contract was terminated at the government's direction because Plaintiff "lost the security clearance required for Plaintiff to perform the work under the [c]ontract."  (Dkt. 23-1 at 2–3.)  Accordingly, even if the Motion were not due to be stricken as a successive motion for summary judgment, the parties have presented conflicting evidence concerning the termination of the contract.  The contradictory testimony and the likely need to assess the credibility of the witnesses constitute genuine issues of material fact that preclude summary judgment as to the breach of contract and damages.  *See Jones*, 683 F.3d at 1292; *Buending v. Town of Redington Beach*, 10 F.4th 1125, 1130 (11th Cir. 2021) ("A court may not weigh conflicting evidence or make credibility determinations of [its] own.  If the record presents disputed issues of fact, the court may not decide them; rather, [it] must deny the motion and proceed to trial." (quotation omitted)).  Thus, viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in its favor, genuine issues of material fact remain for trial as to Count I of the complaint concerning breach of contract and damages.  *See USA Flea Mkt., LLC v.*

*EVMC Real Est. Consultants, Inc.*, 248 F. App'x 108, 111 (11th Cir. 2007) (reversing grant of summary judgment where there was a genuine dispute of material fact regarding the termination of a contract); *Lockheed Martin Corp. v. Galaxis USA, Ltd.*, 222 F. Supp. 2d 1315, 1319 (M.D. Fla. 2002), *aff'd sub nom. Lockheed Martin Corp. v. Galaxis U.S.A. Ltd.*, 88 F. App'x 389 (11th Cir. 2003) (finding genuine issues of material fact and noting that the plaintiff would have "an opportunity to address the contention by [the d]efendants in their response that [the plaintiff] failed to comply with the . . . termination provision in the [a]greement and the effect of that provision on the claimed breaches of the . . . contract"); *Architectural Ingenieria Siglo XXI, LLC v. Dominican Republic*, No. 1:13-CV-20544-KMM, 2017 WL 11630840, at *9 (S.D. Fla. Jan. 12, 2017) (finding issues of fact remained as to damages and thus denying summary judgment).

**CONCLUSION**

Accordingly, Defendant's Motion for Summary Judgment on Liability and Damages (Dkt. 37) is **DENIED**.

**ORDERED** in Orlando, Florida, on December 4, 2024.

_____
JULIE S. SNEED
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of Record